463 A.2d 1148

**Stuart M. BILLS and Anita M. Bills**

**v.**

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 16, 1983.

Filed July 29, 1983.

Petition for Allowance of Appeal Denied Jan. 31, 1984.

---

**2.** *See Park v. Matthews,* 36 Pa. 28, 2 Grant 136 (1853).

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

John J. Hart, Sellersville, for appellant.

Miriam M. Reimel, Bristol, for appellees.

Before CERCONE, P.J., and JOHNSON and MONTEMU-RO, JJ.

JOHNSON, Judge:

This is a consolidated appeal[1] from a judgment awarding no-fault benefits under the Pennsylvania No-fault Motor Vehicle Insurance Act.[2] The injuries giving rise to the claim occurred on August 21, 1979 when a dune buggy in which the claimant was a passenger rolled over while being operated on a privately-owned field. Since we hold that the dune buggy here involved was not a "motor vehicle" as defined by the No-fault Act, we reverse the order and judgment of the trial court.

1. Nationwide Mutual Insurance Company took its first appeal on July 15, 1981 at No. 1816 Philadelphia, 1981 from the order entered June 19, 1981 sustaining the Petition for No-fault Benefits. On July 16, 1981, Nationwide praeciped to have the June 19th order docketed, and on July 17, 1981 filed a second Notice of Appeal from the judgment, at No. 1863 Philadelphia, 1981. On July 16, 1981, the trial court vacated its order of June 19th and entered a new order which provided for the award of benefits together with interest thereon at the rate of 18%. After praeciping that second order to judgment on the docket, Nationwide then took its appeal, on August 7, 1981, at No. 2102 Philadelphia, 1981 from that second judgment. On October 29, 1981, the three appeals were consolidated for argument.

2. Act of July 19, 1974, P.L. 489, No. 176, § 101 et seq.; 40 P.S. § 1009.101 et seq. (Supp.1982–83) (hereinafter cited as the No-fault Act).

The sole question on this appeal is whether a dune buggy fits within the definition of a "motor vehicle" as contained in the No-fault Act. Although any victim of an accident resulting in injury is entitled to receive basic loss benefits in accordance with the Act, 40 P.S. § 1009.201, a "victim" is defined by the Act as "an individual who suffers injury arising out of the maintenance or use of a motor vehicle" 40 P.S. § 1009.103. This latter section of the Act further defines the term "motor vehicle" as meaning "a vehicle of a kind required to be registered under the Act of April 29, 1959 (P.L. 58, No. 32), known as The Vehicle Code." [3] We therefore must look to the Vehicle Code, and any applicable case law, to determine whether the dune buggy in which the claimant was riding at the time of her injury is a "motor vehicle" for purposes of recovery under the No-fault Act.

In *Siefert v. Nationwide Insurance*, 289 Pa.Super. 160, 432 A.2d 1101 (1981) our court was called upon to consider whether a trail bike, which had neither headlights, tail-lights, nor a horn was a vehicle of a kind required to be registered under the Vehicle Code. There, we reviewed the statutory mandate that registration of a vehicle shall be refused when the vehicle is not constructed or equipped as required by the Vehicle Code. After noting that every vehicle operated on a highway is required to be equipped with a head lamp system, a rear lighting system and a horn or other audible warning device, we concluded that trail bikes necessarily cannot be registered because they lack headlights, taillights and horns. 289 Pa.Super. at 163, 432 A.2d at 1102. From that finding, we concluded that a trail bike is not "a vehicle of a kind required to be registered"

---

**3.** In *Siefert v. Nationwide Insurance,* discussed *infra,* we recognized that the 1959 Vehicle Code had been superseded by the 1976 Vehicle Code, Act of June 17, 1976, P.L. 162, No. 81; 75 P.S. § 101 et seq. Finding the legislature's failure to amend the No-fault Act by citing the 1976 Vehicle Code a mere oversight, we proceeded to apply the 1976 Vehicle Code provisions. Here, as there, we note that our result in this case would be the same under the 1959 Vehicle Code. *See Siefert v. Nationwide Insurance,* 289 Pa.Super. 160, 161–62 n. 2, 432 A.2d 1101, 1102 n. 2.

and thus the trail bike in *Siefert* was not a "motor vehicle" as defined by the No-fault Act. *Id.*

■ From the record in the appeal before us, we find that the dune buggy was not equipped with a rear lighting system, turn signals and hazard warning lights, a muffler, and rear wheel shields,[4] all of which are required for operation on a Commonwealth highway.[5] The lack of this equipment, alone, would permit us to conclude that the dune buggy is not "a vehicle of a kind required to be registered" were we to apply the rationale of our court in the *Siefert* case.

■ We feel that further analysis is appropriate on this appeal. We note that the dune buggy had never been insured in this Commonwealth [6] nor had it ever been inspected or licensed in Pennsylvania or any other state.[7] It had been assembled in January 1979, using a chassis and roll cage purchased from Fibertech, a California supplier, and miscellaneous other parts acquired by the owner either from junkyards or old cars. After assembly, the dune buggy was transported on a trailer to a garage located directly across a highway from the privately-owned field where the accident occurred.

We are satisfied from the record that this particular dune buggy was operated only on privately-owned fields and only had contact with a Commonwealth highway when being moved between its storage location and the fields directly across the road.[8] The road which was traversed in moving the dune buggy to and from the fields where it was operated exclusively was a two-lane dead-end road (Old Route 13)

4. Deposition of Andrew C. Simon, September 24, 1980, pp. 10–11, 17, R.R. pp. 61a–62a, 68a; Answer to Interrogatories, No. 24, filed November 5, 1980.

5. 75 Pa.C.S.A. §§ 1302(a), 1306(5), 4303, 4523, 4533.

6. Deposition of Joseph Grznar, April 1, 1981, p. 4, R.R. p. 41a.

7. *Id.*, p. 7, R.R. p. 44a.

8. Deposition of Andrew Simon, *supra,* n. 4, pp. 15–17, 25–26, R.R. 66a–68a, 76a–77a.

with its terminus only fifty feet from the garage driveway where the vehicle was stored.[9] The dune buggy was driven straight across the road to and from the fields.[10] We have no difficulty in concluding that a dune buggy which had contact with the public highways only on seven occasions between February and August 1979, and then merely to cross a two-lane highway to and from a privately-owned field, was not being maintained or used on a public highway within the meaning of the No-fault Act.

We recognize that our court has recently held that the purposes of the Act are not advanced where a court seeks to restrict the phrase "maintenance or use of motor vehicle" to include only the maintenance or use of motor vehicles when used as vehicles on the highway. *Crawford v. Allstate Insurance Company,* 305 Pa.Super. 167, 172, 451 A.2d 474, 477 (1982). In *Crawford,* we reversed the trial court's order sustaining a preliminary objection in the nature of a demurrer where the utility pick-up truck involved, both prior and subsequent to the accident, had been operated upon public highways *as well as* upon railroad tracks (where the subject accident occurred). There, we determined that the pick-up truck was, in fact, a "motor vehicle" under the No-fault Act since it *had* been operated upon public highways and was registered in Ohio. We find the facts in *Crawford* to be distinguishable from this instant appeal.

While we accept the remedial spirit of the No-fault Act as set forth in both Articles I and II, and while we are cognizant that, if we are to err in ascertaining the intent of the Legislature, we should err in favor of coverage for the insured, *Crawford, supra,* 305 Pa.Super. at 170, 451 A.2d at 476, we do not find this to be either a close or doubtful case. Our General Assembly has found and declared:

### § 1009.102 Findings and purposes

9. *Id.,* p. 26, R.R. p. 77a.

10. *Id.*

(a) **Findings.**—The General Assembly hereby finds and declares that:

(1) motor vehicles are the primary instrumentality for the transportation of individuals;

(2) the transportation of individuals by motor vehicle *over Commonwealth highways and other highways* significantly affects intrastate commerce, particularly in metropolitan areas;

(3) the maximum feasible restoration of all individuals injured and compensation of the economic losses of the survivors of all individuals killed in motor vehicle accidents *on Commonwealth highways in intrastate commerce, and in activity affecting intrastate commerce* is essential to the humane and purposeful functioning of commerce; ...

(b) **Purposes.**—Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims.

40 P.S. § 1009.102 (emphasis added). It seems reasonable to assert that our legislature did not have in mind that every conceivable injury arising from the use of any conceivable self-propelled vehicle where the accident might occur anywhere in the Commonwealth would result in no-fault benefits under the Act. Even in *Crawford,* we were able to determine that the vehicle there involved had been used, from time to time, on the public highways.

[5] Appellees argue that since the dune buggy here involved *could have been* driven on a highway, and since it is self-propelled, it fits the definitions of "vehicle" and "motor vehicle" contained in the Vehicle Code. With this proposition, we readily agree. *See* 75 Pa.C.S.A. § 102. As appellees point out in their Brief, however, the issue remains whether this dune buggy is a vehicle "of a kind required to be registered under [the Vehicle Code]."

■ We need not decide, nor do we attempt to determine, whether some other dune buggy, differently equipped or put to some other use, might fit within the ambit of the No-fault Act. We here merely hold that an uninsured, unregistered vehicle which upon assembly lacks a substantial portion of the minimum equipment required for registration in this Commonwealth and which, at the time of the accident, continuously has been operated exclusively off of public highways without such required equipment, is not "a vehicle of a kind required to be registered under [the Vehicle Code]." [11]

We thus conclude that the dune buggy here involved was not a "motor vehicle" as defined by the No-fault Act.[12] Accordingly, the wife-appellee does not fall within the No-fault Act's definition of "victim" and appellees are not entitled to basic loss benefits from Nationwide.

We point out that the distinguished trial judge, the Honorable Kenneth G. Biehn, did not have the benefit of our reasoning in *Siefert v. Nationwide Insurance, supra,* which was decided eight days following the well-reasoned Opinion and Order filed by the trial court in this case.

11. *Cf.* Regulation of the Pennsylvania Insurance Department:
C. "Motor vehicle"—motor vehicle means a vehicle of a kind required to be registered under The Vehicle Code and shall not include:

(e) motor vehicles which are not registered because they are used exclusively off of public highways; ...
31 Pa.Code § 66.1–103(c), cited in *The Pennsylvania No-fault Motor Vehicle Insurance Act* (Pa.T.L.A., D. Shrager ed. 1979).

12. The New Jersey Supreme Court has held that a dune buggy is not a private passenger automobile within the meaning or contemplation of the New Jersey No-fault statute. Therefore, an insured injured in an off-road accident involving a dune buggy was not entitled to personal injury protection benefits. *Wilno v. N.J. Mfrs. Ins. Co.,* 89 N.J. 252, 445 A.2d 713 (1982), reversing 180 N.J.Super. 146, 434 A.2d 605 (1981).
Also, dune buggies have been held not to be automobiles within the meaning of uninsured motorist provisions. *Kansas Farm Bureau Ins. Co. v. Cool,* 205 Kan. 567, 471 P.2d 352 (1970); *see also* Annot., 65 A.L.R.3d 851, 874–75 (1975).

For the reasons set forth in this opinion, the order and judgment of the trial court are reversed, and the case is remanded for the entry of an order and judgment consistent with this opinion. Jurisdiction is not retained.