Helene BURDICK, Individually, and as Executrix of the Estate of Ivan F. Burdick, Deceased, Appellant

v.

ERIE INSURANCE GROUP, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 6, 2007.

Filed April 4, 2008.

Thomas G. Wagner, Saint Mary's, for appellant.

Phillip R. Earnest, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, P.J., MUSMANNO, ORIE MELVIN, TODD, KLEIN, BOWES, GANTMAN, McCAFFERY, and DANIELS, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Helene Burdick ("Helene"), individually, and as Executrix of the Estate of Ivan F. Burdick (collectively, the "Burdicks"), deceased, appeals from the Order granting summary judgment in favor of Erie Insurance Group ("Erie"). The trial court concluded that the Erie policy issued to the Burdicks, which contained an exclusion of uninsured motorist ("UM") coverage for collisions involving motor vehicles designed for use mainly off of public roads, was not contrary to the Motor Vehicle Financial Responsibility Law ("MVFRL").[1] We reverse.

¶ 2 This case arises out of a motor vehicle accident that occurred on July 6, 2001. On that date, the Burdicks were traveling in their vehicle on a public roadway in the City of St. Mary's, Elk County, Pennsylvania.[2] At the time of the accident, Nicholas Dragone[3] ("Dragone") was operating a dirt bike in a private driveway that intersected with the public roadway upon which the Burdicks were traveling. Dragone's dirt bike suddenly entered the roadway in front of the Burdicks' vehicle. The Burdicks' vehicle collided with Dragone's dirt bike and then ran into a ditch. The Burdicks both suffered injuries as a result of the accident.

¶ 3 The dirt bike at issue was unregistered and uninsured. Consequently, the Burdicks filed a claim for UM benefits with Erie. Erie denied the claim on the basis that the dirt bike was specifically excluded because it was designed for use primarily off road.

¶ 4 On June 22, 2004, the Burdicks filed a Complaint for declaratory judgment against Erie. The Burdicks' Complaint sought a judicial declaration that the Burdicks were entitled to UM benefits. Erie filed an Answer and New Matter. Thereafter, both parties filed Motions for summary judgment. On April 3, 2006, the trial court granted summary judgment in favor of Erie, concluding that the exclusion contained within the Erie Policy did not violate the MVFRL. The Burdicks filed a Notice of appeal on May 1, 2006. Pursuant to an Order of the trial court, the Burdicks filed a Concise Statement of mat-

---

1. 75 Pa.C.S.A. §§ 1701 *et seq.*

2. At the time, the Burdicks were covered by an automobile insurance policy issued by Erie, which provided for UM coverage.

3. Dragone was a minor at the time of the accident.

ters complained of on appeal. Thereafter, the trial court issued an Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

¶ 5 In this case, the parties agree that the dirt bike at issue was an uninsured vehicle mainly for use off of public roads. The Burdicks raise the following two issues:

1.  Does a contractual exclusion from uninsured motorist coverage for a collision with a motor vehicle intended primarily for off-road use violate the Motor Vehicle Financial Responsibility Law where the Law makes no provision for such an exclusion?

2.  Is a motor vehicle insurance policy contrary to public policy where it attempts to exclude from uninsured motorist coverage a claim for injuries suffered in a collision on a public highway with a motor vehicle not intended for highway use?

Substituted Brief for Appellant at 4.

¶ 6 As we begin our analysis, we are mindful that our standard of review of an order granting summary judgment is well-settled:

> [O]n an appeal from the grant of a motion for summary judgment ..., [a] reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment

may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law." Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne University of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations omitted).

■■■ ¶ 7 Our resolution of this matter is determined by our construction of the MVFRL. In doing so, we look to the Statutory Construction Act[4] for guidance. We are mindful that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Carrozza v. Greenbaum,* 591 Pa. 196, 916 A.2d 553, 564 (2007) (quoting 1 Pa.C.S.A. § 1921(a)). The Statutory Construction Act requires a court to construe the words of a statute according to their plain meaning. 1 Pa. C.S.A. §§ 1921(b), 1903(a). We must also presume that the legislature did not intend any language of the statute to exist as mere surplusage. *See Bamber v. Lumbermens Mut. Cas. Co.,* 451 Pa.Super. 548, 680 A.2d 901, 904 (1996) (citing 1 Pa.C.S.A. § 1921(a)). Accordingly, "[e]very statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a).

¶ 8 The Burdicks argue that the trial court erred in granting summary judg-

---

4.  1 Pa.C.S.A. §§ 1501 *et seq.*

ment in favor of Erie on the basis of the policy's exclusion of UM coverage for a collision with a motor vehicle intended primarily for off-road use violates the MVFRL. Specifically, the Burdicks contend that since the legislature chose not to make a provision for such an exclusion within the UM coverage statute, as it chose to do with respect to first-party benefits, the policy's exclusion impermissibly narrows the MVFRL. Moreover, the Burdicks assert that the policy's exclusion violates the public policy considerations underlying the MVFRL.

■ ¶ 9 The MVFRL requires that UM coverage be offered. Specifically, the statute provides that "[UM] coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefore from owners or operators of uninsured motor vehicles." 75 Pa.C.S.A. § 1731(b). The Burdicks argue that Dragone's dirt bike falls within the definition of an uninsured motor vehicle for purposes of UM coverage and that the policy's definition of uninsured motor vehicle impermissibly narrows the MVFRL.

■ ¶ 10 The MVFRL defines an "uninsured motor vehicle," in relevant part, as "[a] motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident." 75 Pa.C.S.A. § 1702. While the MVFRL defines uninsured motor vehicle, it does not provide a definition of the term "motor vehicle." The legislature provided a definition of motor vehicle within the broader Vehicle Code. "Motor vehicle" is defined as "[a] vehicle which is self-propelled except an electric personal assistive mobility de-

vice or a vehicle which is propelled solely by human power or by electric power obtained from overhead trolley wires, but not operated upon rails." 75 Pa.C.S.A. § 102. Clearly, the dirt bike at issue falls within the definition of a motor vehicle as defined by the Vehicle Code.[5]

¶ 11 In applying the rules of the Statutory Construction Act, the plain language of the Vehicle Code establishes that the dirt bike upon which Dragone was riding is a motor vehicle as defined by the statute. Moreover, section 1731 clearly provides that "[UM] coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefore from owners or operators of uninsured motor vehicles." 75 Pa. C.S.A. § 1731(b). Accordingly, the exclusion contained in the Erie policy, which excludes UM coverage for a collision with a motor vehicle intended primarily for off-road use, violates the MVFRL.

¶ 12 When construing a statute, the Pennsylvania Supreme Court has also explained that

[a]n exception expressly provided in a statute is a strong indication that the legislature did not intend to exclude unexpressed items. 1 Pa.C.S.A. § 1924. As a matter of statutory interpretation, although "one is admonished to listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say."

*Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.*, 567 Pa. 514, 788 A.2d 955, 962 (2001).

¶ 13 With respect to the MVFRL, the fact that the Legislature specifically im-

---

**5.** Moreover, the dirt bike also satisfies the definition of a motorcycle contained within the Vehicle Code. *Id.* (defining a motorcycle as a "motor vehicle having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground").

posed a limitation regarding coverage for recreational vehicles in certain sections of the statute but not in the UM section is evidence that the Legislature specifically chose not to impose such a limitation with respect to UM coverage. The MVFRL specifically requires insurers to provide first-party medical benefits "covering any motor vehicle *of the type required to be registered under this title, except recreational vehicles not intended for highway use,* motorcycles, motor-driven cycles or motorized pedalcycles or like type vehicles, registered and operated in this Commonwealth...." 75 Pa.C.S.A. § 1711(a) (emphasis added). Section 1730 does not contain a similar limitation. Accordingly, it is clear that the Legislature considered whether the MVFRL should be applicable to situations involving recreational vehicles not intended for highway use, but specifically chose not to limit UM coverage where the accident involved this type of vehicle.

¶ 14 Erie argues that the policy's exclusion of motor vehicles primarily intended for off-road use is supported by *Herr v. Grier,* 448 Pa.Super. 216, 671 A.2d 224 (1995). *Herr* involved a situation where Herr was injured when the four-wheeled golf cart, in which he was riding, overturned. At the time of the accident, the golf cart was being operated on a golf course. Herr sought UM coverage under his automobile policy, which excluded UM coverage for vehicles or equipment "[d]esigned mainly for use off public roads while not on public roads." *Id.* at 227. Herr argued that the exclusion was void because it provided less coverage than that required by the MVFRL. A panel of this Court, relying upon the case of *Schoffstall*

*v. Prudential Property & Casualty Ins. Co.,* 446 Pa.Super. 558, 667 A.2d 748 (1995), concluded that the golf cart was not a motor vehicle within the meaning of the MVFRL because it was not "[a] vehicle of a kind required to be registered under §[§ ] 1301–1377." *Herr,* 671 A.2d at 227–28.

¶ 15 The *Schoffstall* case involved a claim for first-party benefits where the insureds, who were spectators at a racing event, were struck by flying debris following a collision between two race cars. *Schoffstall,* 667 A.2d at 749. The distinction between a claim for first-party benefits and that for UM coverage is critical. As discussed above, the fact that the legislature chose to include, for first-party benefits, a requirement that the motor vehicle be "of the type required to be registered under this title, except recreational vehicles not intended for highway use," but to exclude similar language in the sections concerning UM coverage, indicates that the legislature did not intend to impose a similar restriction on UM coverage. Accordingly, the *Schoffstall* analysis is not applicable to a claim for UM benefits and the panel in *Herr* improperly relied upon *Schoffstall* in denying UM benefits under the MVFRL. For this reason, we call into question the panel's analysis in *Herr.*[6]

¶ 16 Moreover, our decision in this matter is consistent with the public policy behind the enactment of the MVFRL. In this case, the exclusion of UM coverage for a collision with a dirt bike that occurred on a public highway, implicates the legislature's concern for the cost of automobile insurance or the increase in the number of uninsured motorists driving on public high-

---

6. We specifically note that the panel in *Herr* reached the correct outcome despite employing an inappropriate analysis. Moreover, our conclusion with regard to *Herr* is limited only to the panel's analysis of the exclusion from

UM/UIM coverage for vehicles designed mainly for use off of public roads. We express no opinion concerning the panel's conclusion that a golf cart was not an "automobile."

ways.[7] *Pennsylvania Nat. Mut. Cas. Co. v. Black,* 591 Pa. 221, 916 A.2d 569, 580 (2007) (citations and quotations omitted) (explaining that "[t]he repeal of the No–Fault Act and the enactment of the MVFRL reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways").

¶ 17 Judgment reversed; case remanded for entry of judgment in favor of the Burdicks.

¶ 18 TODD, McCAFFERY and DANIELS, JJ., participated in and joined this opinion prior to January 7, 2008.

¶ 19 Judge BOWES concurs in the result.

---

7. Erie also asserts that "there is no logical difference between Nicholas Dragone's dirt bike and an ATV." Substituted Brief for Appellee at 8. We disagree with this assertion. The difference between Dragone's dirt bike and an ATV is the fact that the legislature specifically chose to impose further regulations upon ATVs through the Snowmobile and All–Terrain Vehicle Law ("SATVL"), 75 Pa. C.S.A. §§ 7701 *et seq.* The legislature did not include dirt bikes within the purview of the SATVL, nor did it choose to enact any type of similar legislation applicable to dirt bikes. Accordingly, this argument is not persuasive.