**[J-76-2020] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

IN RE: AMAZON.COM, INC.,
FULFILLMENT CENTER FAIR LABOR
STANDARDS ACT (FLSA) AND WAGE
AND HOUR LITIGATION  NEAL
HEIMBACH; KAREN SALASKY,

        Appellants

        v.

AMAZON.COM, INC.;
AMAZON.COM.DEDC, LLC; INTEGRITY
STAFFING SOLUTIONS, INC.,

        Appellees

: No. 43 EAP 2019
:
:
: Petition for Certification of Question
: of Law from the United States Court
: of Appeals for the Sixth Circuit
:
: ARGUED: September 17, 2020
:
:
:
:
:
:
:
:
:
:
:
:
:

**DISSENTING OPINION**

**JUSTICE MUNDY**                                  **DECIDED: July 21, 2021**

I join Justice Saylor in dissent, and agree with the views he espouses in his dissenting opinion. I write separately to disagree with the majority's assessment regarding the second certified question, insofar as it forecloses any application of the de minimis doctrine under the Pennsylvania Minimum Wage Act (PMWA), § 333.01 - § 333.115. In my opinion, the doctrine may be applied to disputes involving the PMWA in select circumstances. Accordingly, I respectfully dissent.

The de minimis doctrine has had a long and venerable place in Pennsylvania law. As discussed by the parties, the doctrine of de minimis non carat lex has ancient roots. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014). Like other such maxims, it serves as a tool, meant to aid in distinguishing the judicious application of broad statutory

language in circumstances considered trifling or inconsequential.  Jeff Nemerofsky, *What is a Trifle Anyways?*, 37 Gonz. L. Rev. 315, 324 (2002).  Long ago, this Court recognized that our law "'permits the qualification implied in the ancient maxim. . .  Where there are irregularities of very slight consequence, it does not intend that the infliction of penalties should be inflexibly severe.  If the deviation were a mere trifle, which, if continued in practice, would weigh little or nothing on the public interest, it might be properly overlooked.'"  *Bristol-Meyers Co. v. Lit Bros.*, 6 A.2d 843 (Pa. 1939) (quoting 2 Dods, Adm. R. 269, 270).

Our application of this doctrine under the PMWA, as well as many of our other statutes to which this maxim may apply, is evident based on the ways in which we are charged with reading our laws.  Under the Statutory Construction Act, the General Assembly is presumed to be familiar with the extant law when enacting legislation.  1 Pa.C.S. § 1921(c).  As the Commonwealth's de minimis doctrine stretches back to a time predating the PMWA's enactment, it would make sense that the General Assembly did not specifically carve out an exception when drafting the statute.

Pennsylvania has recognized this doctrine in different contexts.  In *Ford v. Am. States Ins. Co.*, 154 A.3d 237 (Pa. 2017), this Court applied the de minimis doctrine in the context of the Motor Vehicle Financial Responsibility Law, finding that slight deviations from the statutorily-prescribed text of an uninsured motorist coverage form was justified.  In *Bailey v. Zoning Bd. of Adjustment of City of Phila.*, 801 A.2d 492 (Pa. 2002), this Court utilized the de minimis doctrine in the context of zoning issues.  Our Commonwealth Court and Superior Court have also routinely relied on this fundamental doctrine in the context of zoning disputes, as well as others.  *See e.g., Lench v. Zoning Bd. of Adj. of the City of Pittsburgh*, 13 A.3d 576 (Cmwlth. Ct. 2010) (affirming the grant of a variance under the de minimis doctrine); *Constantino v. Zoning Hearing Bd. of Borough of Forest Hills*, 618

A.2d 1193 (Cmwlth. Ct. 1992) (finding the trial court did not err in denying a variance request because the deviation was not de minimis); *Commonwealth v. Hoffman*, 714 A.2d 443 (Pa. Super. 1998) (reversing judgment of sentence based on the de minimis nature of an infraction); *Yeakel v. Driscoll*, 467 A.2d 1342 (Pa. Super. 1982) (applying the de minimis doctrine to resolve an encroachment issue).

In addition to knowing the extant law, we are also charged with reading statutes in such a way to exclude a result that is "absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). I submit this tenet of statutory construction essentially charges us with heeding the words of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), where it is appropriate.

In *Anderson*, the Supreme Court stated that "[w]e do not, of course, preclude application of a de minimis rule where the minimum walking time is such as to be negligible. The workweek contemplated by § 7(a) must be computed in light of the realities of the industrial world. When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles must be disregarded." *Id.* at 692. When interpreting the PMWA according to our canons, our law dictates we provide an allowance for situations in which employers must go through immensely burdensome lengths to capture their employees' hours of work. The requirement that an employer accurately capture time is always subject to the restriction that we not impose any liability where time capture violates § 1922(1). The *Anderson* Court considered its relevant issues against the backdrop of a different world, made up of technologies, labor demands, and a workforce unlike what we currently picture. Nevertheless, its lesson transcends: fleeting moments of time impossibly measured should not be the source of liability.

It is persuasive that beyond the courts of Pennsylvania, other jurisdictions have allowed for the application of the de minimis doctrine. As the de minimis maxim is one of general application in jurisdictions besides our own, it is insightful to see how other courts considered its place in the context of broad, policy-oriented legislation. Appellees point out Illinois and Washington courts have discussed the de minimis doctrine as it applies in the realm of wage and employment disputes. Courts applying both jurisdictions' labor and employment laws have favorably cited the doctrine. *See* Appellee's Brief at 43-45 (citing *Mitchell v. JCG Industries, Inc.*, 745 F.3d 837, 845 (7th Cir. 2014) ("the de minimis rule is alive and well in Illinois' law of employee compensation."); *Levias v. Pac. Mar. Ass'n*, 760 F. Supp. 2d 1036 (W.D. Wash. 2011) (finding the de minimis doctrine applicable under Washington law)). Notably, these jurisdictions define "hours worked" in a similar way as our Commonwealth. *See* 56 Ill. Admin. Code § 210.110 (defining "hours worked" as "all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work and any additional time he or she is required or permitted to work for the employer."); Wash. Admin. Code § 296-126-002(8) (stating "hours worked" "shall be considered to mean all hours during which the employee is authorized or required by the employer to be on duty on the employer's premises or at a prescribed place of work.").

Only California has explicitly foreclosed the application of the de minimis doctrine as set forth in *Anderson*. Interestingly, the California Supreme Court declined to foreclose its application as a matter of state law, instead deciding the case on the facts presented. In *Troester v. Starbucks Corp.*, 421 P.3d 1114 (Ca. 2018), a Starbucks employee sought compensation for time spent performing store closing activities after clocking out, as required by his employer. The court concluded California statutes had not adopted the federal de minimis doctrine, but left open "whether there are wage claims involving

employee activities that are so irregular or brief in duration that employers may not be reasonably required to compensate employees for time spent on them." *Id.* at 1125. Several Justices pointed out the logic in maintaining a de minimis exception to wage and employment issues, even where the law was clearly enacted for the benefit and protection of California employees. *See id.* at 1126 (Cuéllar, J., concurring opinion) ("As easily available technologies can increasingly track our every movement and moment, California law still protects workers from being forced to undertake work that won't be paid. That protection is not diluted if it remains possible for employers to argue against liability for moments so fleeting that they are all but imperceptible."); *see id.* at 1129 (Kruger, J., concurring opinion) ("[T]he law recognizes that there may be some periods of time that are so brief, irregular of occurrence, or difficult to accurately measure or estimate, that it would neither be reasonable to require the employer to account for them nor sensible to devote judicial resources to litigating over them.").

In a similar vein, the Wisconsin Supreme Court has considered the application of the de minimis doctrine, albeit in the collective bargaining context. In *Piper v. Jones Dairy Farm*, 940 N.W.2d 701 (WI. 2020), the court considered whether donning and doffing protective gear was compensable under a collective bargaining agreement between a dairy farm employer and unionized workers. The majority explained that since Wisconsin law requires that employees be paid for "all hours worked," Wis. Admin. Code § DWD 272.12, putting on/taking off protective gear was not exempt from the collective bargaining agreement. *Id.* at 706. In response to employer's argument that the time spent (approximately eight minutes) was de minimis, the court explained it "assum[ed] without deciding that the de minimis doctrine applies to claims" arising under Wisconsin law. *Id.* at 703. Despite its acknowledgement of the doctrine's relevance, the court decided the time was not de minimis. *Id.* As in California, several Justices urged the court to go

further and formally adopt the de minimis doctrine. *See id.*, at 714 (Ziegler, J., dissenting opinion) ("I would conclude the de minimis doctrine does indeed apply to claims arising under Wis. Admin. Code § DWD 272.12."); *Id.* at 721 (Bradley, J., dissenting opinion) ("The de minimis doctrine is prevalent in other areas of Wisconsin law, and the doctrine applies to labor and employment claims under federal law. I would apply the de minimis doctrine to claims under Wisconsin's labor law. . ..").

All of this is to say that other jurisdictions have similarly grappled with the application of this doctrine under state and federal law, and have conceded its wisdom in wage and employment disputes. The majority suggests this doctrine's contours "remain in flux. . . and, thus, it is not a clear principle which readily lends itself to interpretation of a unique statutory enactment such as the PMWA." Maj. Op. at 27. I submit that even if the contours are in flux, the central principles of the doctrine are apparent. The majority itself recognizes this doctrine's relevance in our law. Maj. Op. at 27. Of course, this doctrine should be applied only in extreme circumstances in which an employer has proven that time is truly incapable of being captured. But I do not think that the courts should foreclose this as a possibility based simply on the fact that our legislation was enacted to benefit the Commonwealth's workforce. Given the actions of other jurisdictions and the doctrine's place in the background of our own law, I would allow employers the opportunity to assert this doctrine.

In addition to comporting with our law, applying the de minimis doctrine to the PMWA would curb the "limitless range of probable disputes" an employer may face for the small trifles it is exposed to under the majority's decision. *See* Saylor, J. Dissenting Op. at fn.2. It is easy to envision a situation where, even despite an employer's best intentions, a small and immeasurable amount of time passes. Badges take time to swipe, computers do not load immediately, and cash boxes take a moment to lock. The amount

of time in dispute, as Justice Saylor points out, is a material fact essential to our resolution of issues arising under the PMWA. *Id.* at 2. It is especially pertinent to have a clear set of facts when venturing to determine the de minimis nature of time. Where parties disagree as to the amount of time and the way in which it is spent, as is the case in the present scenario, a factual record must be developed from which we can make a legal determination.

Beyond what we can envision at the moment, the ways employers and employees conduct business constantly evolves. Much like how our working world has changed since *Anderson,* so too will we look back on today's labor and employment ecosystem and consider it a reflection of its time.[1] Our law provides us the ability to maintain flexibility in considering disputes under the PMWA, and I submit it is prudent to recognize our ability to do so. Based on the foregoing, I respectfully dissent.

Justice Saylor joins this dissenting opinion.

---

[1] Take, for example, the COVID-19 pandemic and its sudden effect on the way large portions of the workforce were expected to perform their duties. Kim Parker, *How the Coronavirus Has – and Hasn't – Changed the Way Americans Work*, Pew Research Center (Dec. 9, 2020), https://www.pewresearch.org/social-trends/2020/12/09/how-the-coronavirus-outbreak-has-and-hasnt-changed-the-way-americans-work/, last accessed May 15, 2021.